## YATES *v.* THOMASON.

### Opinion delivered May 27, 1907.

1. INSURANCE—PROOF OF LOSS—WAIVER.—Denial by the insurer of any liability under the policy upon other grounds is a waiver of the requirements in the policy of proof of loss, although the parties had signed a nonwaiver agreement to the effect that any action taken by the insurer in investigating the cause or amount of loss should not waive any of the conditions of the policy, where the purpose of such agreement was stated to be to preserve the rights of the parties until there could be an investigation of the fire and determination of the amount of loss. (Page 127.)

2. SAME—IRON-SAFE CLAUSE—QUESTION FOR JURY.—The question whether the iron-safe clause in a policy of fire insurance has been complied with is a question of fact for the jury. (Page 130.)

3. SAME—IRON-SAFE CLAUSE.—Evidence that the insured kept the book which showed his cash sales in the cash drawer, instead of in his iron safe, fails to show a substantial compliance with the iron-safe clause of the policy. (Page 130.)

Appeal from Mississippi Circuit Court; *A. B. Shafer,* Special Judge; reversed.

*Dan W. Jones* and *Robert Martin,* for appellant.

1. The verdict is contrary to the evidence and should be reversed for failing to comply with the "Proof of Loss" clause. No proof of waiver is shown.

2. It was error to modify the third request of appellant. 65 Ark. 240-249; 64 *Id.* 590-596; 35 Md. 101; 64 Ark. 596.

3. It was also error to refuse to instruct, as asked in appellant's fifth request, as to violation of the iron-safe clause. 61 Ark. 207.

*W. J. Lamb, D. F. Taylor* and *W. J. Driver,* for appellee.

1. The verdict is amply sustained by the evidence, and there was no error in the court's charge.

2. The proof of loss was waived in express terms and by the conduct of appellant. 53 Ark. 494; 62 *Id.* 348; 74 *Id.* 72; 77 *Id.* 27; 77 *Id.* 41; 82 Ark. 226. The signing of a nonwaiver agreement does not preclude an oral waiver of proof of loss. 82 Ark. 226; 60 Ark. 532; 61 *Id.* 108; 62 *Id.* 348.

3. There was a substantial compliance with the iron-safe clause. 38 Fed. 19; 65 Ark. 386; 74 *Id.* 72.

4. Attorney's fees under statutes are allowed. 110 Am. St. 118; 97 *Id.* 624; 185 U. S. 308.

HILL, C. J. This is an action on an insurance policy brought by G. W. Thomason as assignee of V. V. Bertt against the People's Fire Insurance Company. After judgment against the insurance company in the circuit court, it appealed, and F. B. Yates as receiver has been substituted as appellant. Many questions were raised in the lower court and preserved in the motion for new trial; but all of them have been abandoned except four, which will be discussed *seriatim.*

1. It is argued that the evidence shows that the recovery should have been for less than the full face of the policy, owing to the three-fourths clause, which was a part of the policy. Appellant's calculation is based upon the assumption that the

goods were purchased in May, but, as a matter of fact, the evidence shows that, while probably contracted for at that time, they were not turned over to Bertt until September, and the time for subtracting the sales from the gross amount of the goods should run from September instead of May. Calculated upon this basis, and it is a correct one, there were enough goods on hand to have allowed a full recovery on the face of the policy. In other words, the insured bore more than one-fourth of the risk, and that is what the three-fourths clause required.

2. It is contended that the verdict is contrary to the evidence, in that the denial of liability was not proved, and therefore the proof of loss was not waived, and it is admitted that the proof of loss was not furnished. The evidence is ample from Mr. Bertt and from his attorney, Mr. Driver, as to a denial of liability by the appellant, and that, acting upon such denial, Mr. Driver brought this suit. And it has long been settled by many decisions of this court that a denial of liability waives proof of loss.        •

3. The court gave this instruction:

"The defendant may waive a compliance of the proof-of-loss clause of its policy, either expressly or by its conduct. If the defendant denied its liability under the policy, you are instructed that such conduct would relieve the plaintiff of any liability to perform his agreement under this proof-of-loss clause, and would amount to a waiver thereof by defendant, although a contract of non-waiver had been duly executed prior thereto."

There was a nonwaiver agreement in this case, and it is contended that such agreement protected the officers of the company from evidence proving they waived any provisions of the policy. The nonwaiver agreement which was executed by the parties is as follows:

"It is hereby mutually understood and agreed by and between V. V. Bertt, party of the first part, and the Security Fire Insurance Company of Little Rock, Arkansas, and other companies signing this agreement, parties of the second part, that any action taken by the said parties of the second part in investigating the cause or investigating the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on the second day of November,

1905, shall not waive or invalidate any of the conditions of the policies of the parties of the second part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement. The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of loss or damage, without regard to the liability of the parties of the second part."

This nonwaiver agreement shows on its face its one and only purpose, which is "to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of loss or damage, without regard to the liability of the parties of the second part." But, when such liability and the course of the company has been determined, then the nonwaiver agreement has served its purpose, and its force is spent. This is peculiarly applicable to the facts here. The parties negotiated for a settlement, went into an examination of the books, and discussed freely and fully under the protection of the nonwaiver agreement the rights of each party, and finally the manager of the company reached the conclusion that the company was not liable, and notified the attorney for the assured that they were not liable, and the attorney, as he expressed it, bowed himself out, and went home and brought this suit upon the strength of such denial. The agreement had served its purpose, and when that purpose was served it was terminated, and can not be extended beyond its office to take from a party the consequences of its action in denying liability. The court was right in giving the instruction in question.

4. It is contended that the evidence shows that the iron-safe clause was violated, in that Mr. Bertt failed to keep in his iron safe the book which showed the account of sales. This book seems to be the only record showing sales. It was a small book, and Mr. Bertt was in the habit of keeping it in the cash drawer in the day time and in the safe at night. Mr. Bertt testifies that through his carelessness the night of the fire it was left in the store, and was burned with it. There is no book or other written evidence which shows the amount of the sales, either credit or cash; and the amount thereof was attempted to be supplied by the testimony of Mr. Bertt and of his bookkeeper, showing that said sales were approximately eight to

ten dollars a day from the time the business was opened in September to the time of the fire in November.

The iron-safe clause requires: "The assured shall keep a set of books which shall clearly and plainly present a complete record of business transacted in reference to the property herein mentioned, including all purchases, sales and shipments, both for cash and credit," and shall keep "all books kept in his business since the date of such last preceding inventory securely locked in a fire-proof safe at night and at all times when the building mentioned in this policy is not actually open for business, or shall keep such books and inventories in some secure place not exposed to a fire which would destroy the aforesaid building." Whether this clause has been complied with is a question of fact to be submitted to the jury upon the evidence. *Western Assurance Co.* v. *Altheimer,* 58 Ark. 573; *Greenwich Ins. Co.* v. *State,* 74 Ark. 72.

This court has had occasion recently to give construction to the act of 1899, § 4375a of Kirby's Digest, and has liberally construed said section to meet the design of the Legislature, and has sustained verdicts which have found compliance with the iron-safe clause wherever there was evidence tending to prove that the books, inventories and memoranda substantially fulfilled this requirement. *People's Fire Ins. Co.* v. *Gorham,* 79 Ark. 160; *Security Mutual Ins. Co.* v. *Berry,* 80 Ark. 92; *Queen of Ark. Ins. Co.* v. *Cooper-Cryer Co.,* 80 Ark. 160; *Arkansas Mut. F. Ins. Co.* v. *Woolverton,* 82 Ark. 476.

In each of these cases there has been a question of fact, and evidence either from the books or those familiar with them tending to prove that the objects and purposes of the iron-safe clause had been substantially met. But such is not the case here. The books were not before the jury, and there was no testimony tending to show that the books preserved contained even a summary of the sales, and no written evidence of any data of such sales was preserved. The only evidence attempted to be given to the insurance company in asking settlement and on the trial in asking judgment of such sales was the testimony of the assured and his bookkeeper who sought to approximate from memory the average amount of such sales. It is to avoid just such testimony that the iron-safe clause is put into

all standard form policies. While it is the intention of the Legislature that this contract shall not be strictly enforced, and this court has given and will give a liberal construction to this remedial legislation, yet the contract has not been made illegal by the Legislature, and can not be abrogated by juries and courts. It has been deliberately made by the parties, and must be complied with in substance. The undisputed evidence here is that it was not complied with in a material and vital matter.

Judgment reversed and cause remanded.